UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NANCY KNIGHT,

        Plaintiff,                                   Hon. Robert J. Jonker

v.                                                Case No. 1:12-CV-1132

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

# STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff was 43 years of age on her alleged disability onset date and 48 years of age when her insured status expired. (Tr. 21, 150). Plaintiff successfully completed high school, as well as "some college," and worked previously as a waitress, customer service representative, and coupon redemption person. (Tr. 23, 37).

Plaintiff applied for benefits on April 7, 2008, alleging that she had been disabled since August 31, 2002, due to chronic obstructive pulmonary disease (COPD), asthma, sinus difficulties, and a pinched nerve in her left upper extremity. (150-53, 191). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 73-149). On May 25, 2011, Plaintiff appeared before ALJ William Decker, with testimony being offered by Plaintiff and vocational expert, David Holwerda. (Tr. 33-72). In a written decision dated June 8, 2011, the ALJ determined that Plaintiff was not disabled. (Tr. 19-24). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-4). Plaintiff subsequently initiated this pro se appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on September 30, 2007. (Tr. 21). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must

3

establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## **RELEVANT MEDICAL EVIDENCE**

On June 12, 2003, Plaintiff participated in a CT scan of her paranasal sinuses, the results of which revealed "mucosal thickening," but "no areas of bone destruction" and "no significant enlargement of the turbinates." (Tr. 264). The septum was "not displaced" and the meatal ostium "remains patent." (Tr. 264). Subsequent treatment notes indicate that Plaintiff was diagnosed with asthma for which she was prescribed medication. (Tr. 281-89).

On September 20, 2006, Plaintiff reported to the emergency room complaining of mild to moderate shortness of breath. (Tr. 270). An x-ray of Plaintiff's chest revealed hyperaeration of the lungs with no evidence of infiltrates, effusion, or vascular congestion. (Tr. 275). Plaintiff received "asthma protocol" treatment after which she was discharged in "stable" condition. (Tr. 268, 271).

On March 8, 2008, Plaintiff reported to the hospital complaining of "increasing cough and shortness of breath." (Tr. 302). X-rays of Plaintiff's chest revealed hyperinflation of the lungs with "no infiltrate, effusion, or pneumothorax." (Tr. 305). Plaintiff was diagnosed with COPD exacerbation and tobacco abuse. (Tr. 304). Plaintiff was "discharged home on steroids and antibiotics." (Tr. 294). Plaintiff, however, "never filled her medication and resumed smoking and then early morning of [March 11, 2008] had an onset of worsening of the shortness of breath." (Tr. 294). Plaintiff was admitted to the hospital for treatment and was discharged home two days later. (Tr. 294). The results of a March 17, 2008 examination were unremarkable and Plaintiff was "in no

4

acute distress." (Tr. 309). Plaintiff was encouraged to discontinue smoking and continue taking her medications. (Tr. 309).

Treatment notes dated December 22, 2009, indicate that Plaintiff had recently been experiencing "a massive increase in her coughing and shortness of breath." (Tr. 374-75). The results of a physical examination revealed:

> Oropharynx is clear. Neck is supple without nodes. Lungs clear to percussion with good breath sounds bilaterally. There are mild expiratory wheezes present when [Plaintiff] is supine only. They clear when she is upright. No rales are noted. Heart rhythm regular without murmurs, rubs or gallops. Abdomen soft with good bowel sounds. No masses, tenderness or organomegaly. No CVA tenderness. Extremities normal.

(Tr. 374).

Treatment notes dated September 21, 2010, suggest that Plaintiff's condition had deteriorated. (Tr. 397-98). X-rays of Plaintiff's chest, taken the following day, revealed "hyperaeration and mild pulmonary stranding or fibrosis, compatible with COPD," but "no acute pulmonary process [and] no definite infiltrate." (Tr. 411).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

5

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that as of the date Plaintiff's insured status expired, Plaintiff suffered from asthma, a severe impairment that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 21-22). With respect to Plaintiff's residual functional capacity, the ALJ determined that as of the date Plaintiff's insured

---

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

status expired, she retained the capacity to perform a full range of work at all exertional levels, but must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. (Tr. 22).

At the administrative hearing, a vocational expert testified regarding Plaintiff's past relevant work. (Tr. 46). The vocational expert characterized Plaintiff's previous work as a waitress as light and semiskilled. (Tr. 46). The vocational expert characterized Plaintiff's previous work as a customer service representative and coupon redemption person as sedentary and semiskilled. (Tr. 46). The vocational expert further testified that Plaintiff's RFC did not preclude the performance of any of her past relevant work. (Tr. 68-69). Finding that Plaintiff was able to perform her past relevant work, the ALJ determined that Plaintiff was not disabled.

    A.    Section 3.03 of the Listing of Impairments

The Listing of Impairments, detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1, identifies various impairments which, if present to the severity detailed therein, result in a finding that the claimant is disabled. Plaintiff asserts that the ALJ erred by failing to find that her asthma satisfied the requirements of Section 3.03 of the Listing of Impairments. To satisfy this particular listing, Plaintiff must demonstrate that her condition satisfies one of the following:

    A.    Chronic asthmatic bronchitis. Evaluate under the criteria for chronic obstructive pulmonary disease in 3.02A; or

    B.    Attacks (as defined in 3.00C),[2] in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six

---

[2] An "attack[] of asthma" is defined as "prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting." 20 C.F.R., Part 404, Subpart P, Appendix 1 § 3.00C. This provision further provides that "[t]he medical evidence must also include information documenting adherence to a prescribed regimen of treatment as well as a description of physical signs." Moreover, "[f]or asthma, the medical evidence should include spirometric results obtained between attacks that document the presence of baseline airflow obstruction." *Id.*

> times a year. Each in-patient hospitalization for longer than 24 hours for
> control of asthma counts as two attacks, and an evaluation period of at least
> 12 consecutive months must be used to determine the frequency of attacks.

20 C.F.R., Part 404, Subpart P, Appendix 1 § 3.03.

Chronic asthmatic bronchitis is assessed by reference to the claimant's FEV1[3] ability. *See* 20 C.F.R., Part 404, Subpart P, Appendix 1 § 3.02A. The record contains no evidence that Plaintiff's FEV1 ability was ever determined, either before or after the expiration of her insured status, to be at or below the threshold articulated in § 3.02A of the Listings.

The record likewise fails to establish that Plaintiff suffered the requisite severity and frequency of asthma attacks. While Plaintiff was diagnosed with asthma in March 2004, she experienced, prior to the expiration of her insured status, only one asthma attack that required treatment in a hospital or equivalent setting. (Tr. 250-89). Specifically, on September 20, 2006, Plaintiff was experiencing "difficulty breathing" for which she reported to an emergency room. (Tr. 266-75). Plaintiff received treatment in response to which her condition "improved." (Tr. 266-75). Plaintiff did not suffer another asthma attack requiring treatment in a hospital or equivalent setting until March 2008, well after the expiration of her insured status. (Tr. 290-306). The Court notes that, as discussed above, this particular episode appears to have been precipitated by Plaintiff's refusal to comply with her care providers' treatment instructions.

The burden rests with Plaintiff to demonstrate that she satisfies the requirements of a listed impairment. *See Kirby v. Comm'r of Soc. Sec.*, 2002 WL 1315617 at *1 (6th Cir., June 14,

---

[3] FEV1 (Forced Expiratory Volume in 1 Second) refers to the volume of air expired in the first second during maximal expiratory effort. *See* Pulmonary Function Tests, available at http://meded.ucsd.edu/isp/1998/asthma/html/spirexp.html (last visited on November 12, 2013).

2002). The ALJ evaluated the evidence of record and determined that Plaintiff failed to meet her burden. The ALJ's decision is supported by substantial evidence.

B. The ALJ Evaluation of Plaintiff's Impairments

Plaintiff next asserts that she is entitled to relief because the ALJ failed to find that her COPD constituted a severe impairment. The ALJ acknowledged that Plaintiff presently suffered from COPD, but observed that Plaintiff was not first diagnosed with COPD until well after the expiration of her insured status. Accordingly, the ALJ concluded that as of the date Plaintiff's insured status expired, Plaintiff suffered from asthma alone. (Tr. 21).

At step two of the sequential disability analysis articulated above, the ALJ must determine whether the claimant suffers from a severe impairment. The Sixth Circuit has held that where the ALJ finds the presence of a severe impairment at step two and proceeds to continue through the remaining steps of the analysis, the alleged failure to identify as severe some other impairment constitutes harmless error so long as the ALJ considered the entire medical record in rendering his decision. *See Maziarz v. Sec'y of Health and Human Services*, 837 F.2d 240, 244 (6th Cir. 1987); *Kirkland v. Commissioner of Social Security*, - - - Fed. Appx. - - -, 2013 WL 2233881 at *2 (6th Cir., May 22, 2013) ("so long as the ALJ considers all the individual's impairments, the failure to find additional severe impairments. . .does not constitute reversible error"); *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir., Feb. 22, 2008) (same); *Fisk v. Astrue*, 253 Fed. Appx. 580, 583-84 (6th Cir., Nov. 9, 2007) (same).

Here, the ALJ determined that Plaintiff suffered from a severe impairment at step two of the sequential analysis and continued with the remaining steps thereof, considering the entire,

albeit scant, medical evidence of record. As the ALJ correctly observed, Plaintiff was not diagnosed with COPD until March 2008, well after the expiration of her insured status. (Tr. 290-306). Plaintiff may be correct that "it is common for COPD to go undiagnosed until it progresses to a more severe stage." The relevant question, however, is not whether Plaintiff should have been diagnosed with COPD earlier, but whether the limitations imposed by her impairments (including her COPD) satisfied the requirements of the Social Security Act prior to the expiration of her insured status. In this regard, the ALJ concluded that "neither [Plaintiff's] asthma nor any other impairment present through September 30, 2007 reasonably prevented her from engaging in substantial gainful activity." (Tr. 23). As the medical evidence detailed above makes clear, this conclusion is supported by substantial evidence.

Thus, even if it is assumed that the ALJ erred in failing to find that Plaintiff's COPD constituted a severe impairment prior to the expiration of Plaintiff's insured status, such does not call into question the substantiality of the evidence supporting the ALJ's decision. This argument is, therefore, rejected. *See Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (recognizing that the harmless error doctrine is intended to prevent reviewing courts from becoming "impregnable citadels of technicality"); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 535-36 (6th Cir. 2001) (recognizing that remand to correct an error committed by the ALJ unnecessary where such error was harmless); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("no principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"); *Berryhill v. Shalala*, 1993 WL 361792 at *7 (6th Cir., Sep. 16, 1993) ("the court will remand the case to the agency for further consideration

only if 'the court is in substantial doubt whether the administrative agency would have made the same ultimate finding with the erroneous finding removed from the picture...'").

### C. The ALJ's RFC Determination

The ALJ determined that as of the date Plaintiff's insured status expired, she retained the capacity to perform a full range of work at all exertional levels, but must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. Plaintiff asserts that she is entitled to relief because she was incapable of performing medium,[4] heavy,[5] or very heavy[6] work.

Even if the Court assumes that the ALJ's conclusion that Plaintiff can perform medium, heavy, and very heavy work is faulty, such does not entitle Plaintiff to relief. The ALJ also found that Plaintiff was capable of performing light[7] and sedentary[4] work, a determination that is supported by substantial evidence. None of Plaintiff's care providers have indicated that Plaintiff, prior to the expiration of her insured status, was incapable of performing work at the light or

---

[4] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 404.1567(c).

[5] Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. 20 C.F.R. § 404.1567(d).

[6] Very heavy work involves lifting more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. 20 C.F.R. § 404.1567(e).

[7] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983); *Van Winkle v. Commissioner of Social Security*, 29 Fed. Appx. 353, 357 (6th Cir., Feb. 6, 2002).

[4] Sedentary work involves lifting "no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567. Furthermore, while sedentary work "is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.*

sedentary level. The vocational expert testified that Plaintiff's past relevant work was light or sedentary in nature and did not involve concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. Thus, the ALJ's conclusion that Plaintiff was capable of performing her past relevant work is supported by substantial evidence. Even if the Court assumes that the ALJ erred in finding that Plaintiff could perform medium, heavy, or very heavy work, such error is harmless and does not support relief in this instance.

### D. The ALJ's Failure to Order Medical Testing

Finally, Plaintiff argues that the ALJ erred by failing to order additional medical testing. Plaintiff asserts that such would have demonstrated the severity of her impairments. As Defendant correctly asserts, the decision whether to obtain additional medical testing or examination is within the ALJ's discretion. Plaintiff bears the burden "to produce a complete medical record" and while the ALJ "has broad latitude" to obtain additional medical testing or examination, the ALJ "is not required to do so unless the record establishes that such an examination is necessary to enable the ALJ to make the disability decision." *Culp v. Commissioner of Social Security*, 2012 WL 4490746 at *4 (W.D. Mich., June 15, 2012) (citations omitted); *see also*, 20 C.F.R. § 404.1519a (same).

The Court fails to discern the relevance of the additional medical examination and testing Plaintiff faults the ALJ for failing to obtain. While such testing would certainly have indicated Plaintiff's then present condition, it is unlikely to have shed any appreciable light on Plaintiff's condition prior to the expiration of her insured status several years previous. Moreover, the present administrative record is more than sufficient to enable the ALJ to render a decision on

Plaintiff's claim. Accordingly, the Court discerns no error in the ALJ's failure to order additional medical examination or testing.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                                                Respectfully submitted,

Date: December 10, 2013                                    /s/ Ellen S. Carmody
                                                                                   ELLEN S. CARMODY
                                                                                   United States Magistrate Judge